UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES R. TARLTON, | ) | No. EDCV 14-2220 AGR |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN,<br>Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff James R. Tarlton filed this action on November 18, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On July 23, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

**I.**

**PROCEDURAL BACKGROUND**

Tarlton filed an application for supplemental security income and alleged an onset date of June 1, 2009.[1] AR 179-99. The application was denied initially and on reconsideration. AR 83, 97. Tarlton requested a hearing before an ALJ. AR 134. On April 9, 2014, the ALJ conducted a hearing at which Tarlton and a vocational expert testified. AR 36-59. On April 25, 2014, the ALJ issued a decision denying benefits. AR 17-29. On August 26, 2014, the Appeals Council denied the request for review. AR 1-6. This action followed.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

---

[1] Tarlton was found to be not disabled in a June 26, 2008 Administrative Law Judge ("ALJ") decision based on a prior application for supplemental security income filed on May 12, 2006. Administrative Record ("AR") 64-71.

# III.

# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Tarlton met the insured status requirements through September 28, 2012. AR 19. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[2] the ALJ found that Tarlton had the severe impairments of wedge compression deformity of the lumbar spine, multilevel degenerative disc disease of the lumbar spine, and spondylosis of the lumbar spine. *Id.* His impairments did not meet or equal a listing. AR 23.

The ALJ found that Tarlton had the residual functional capacity ("RFC") to perform light work. He could lift and/or carry 20 pounds occasionally and 10 pounds frequently; and sit, stand and/or walk for six hours out of an eight-hour workday with customary breaks. He could frequently climb ladders, ropes, scaffolds, ramps, and stairs. He could frequently balance, stoop, kneel, crouch, and crawl. He was limited to

---

[2] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

semiskilled work. He was capable of performing past relevant work as a home attendant as actually performed.[3] AR 23-29.

### C. Step Two of the Sequential Analysis

At step two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. § 404.1508; 20 C.F.R. § 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[4] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen*, 80 F.3d at 1290 ("[A]n impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and quotation marks omitted).

---

[3] The ALJ appears to have made a typographical error when he stated that Tarlton was capable of performing past relevant work as *"generally"* performed, as he correctly cited and relied on the VE's testimony that a hypothetical person with Tarlton's RFC could perform Tarlton's past relevant work only as "actually" performed. AR 29, 57.

[4] The ability to do basic work activities includes "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," "[c]apacities for seeing, hearing, and speaking," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers, and usual work situations," and "[d]ealing with changes in a routine work setting." *Yuckert*, 482 U.S. at 168 n.6 (citation and internal quotation marks omitted); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted). Step two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "clearly established by medical evidence." *Id.* at 687 (citations and internal quotation marks omitted).

The ALJ found that Tarlton has medically determinable mental impairments of schizophrenia, borderline intellectual functioning, alcohol dependence and marijuana dependence. The ALJ concluded that these mental impairments, alone or in combination, were nonsevere because they did not cause more than a minimal limitation on his ability to perform basic mental work activities. AR 20. The ALJ found no limitation in activities of daily living and social functioning, mild limitation in concentration, persistence or pace, and no episodes of decompensation. AR 20-21. The ALJ therefore found the mental impairments to be nonsevere. 20 C.F.R. § 416.920a(d)(1). The ALJ limited Tarlton to semi-skilled work and found that he could perform his past relevant work of home attendant with a SVP of 3.[5] AR 23, 29. Semi-skilled work corresponds to a specific vocational preparation (SVP) level of 3-4 in the Dictionary of Occupational Titles (DOT). Social Security Ruling (SSR) 00-4p.[6]

---

[5] The ALJ's finding contains a typographical error. The ALJ correctly noted that the vocational expert testified Tarlton could perform his past relevant work as actually performed. AR 29, 57. The ALJ proceeded to find that Tarlton could perform his past relevant work "as generally performed based on the testimony of the vocational expert." AR 29.

[6] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

1    The ALJ stated that he did not completely adopt the assessment of any single
2 medical source. AR 28. As the ALJ noted, Tarlton made inconsistent statements and
3 presented inconsistent subjective complaints to the mental health providers. AR 21.

### 1. Treating Physician's Opinion

Tarlton argues that the ALJ improperly considered the opinion of Dr. Messinger, a treating psychiatrist.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

According to a report dated August 1, 2013, Dr. Messinger had seen Tarlton since January 10, 2013. Tarlton was diagnosed with Psychotic Disorder, NOS, and was prescribed Paxil, Trazodone, and Risperdal. Tarlton had clearly organized and paranoid thoughts; delusions and auditory psychosis; intact memory; impaired judgment; and had depression, anxiety, isolation, social withdrawal and flattened affect. Tarlton did not have the ability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, or adapt to new or stressful situations. He could not interact appropriately with strangers. He needed assistance with medications. He could not complete a 40 hour work week without decompensating. AR 330.

The ALJ gave "little weight" to Dr. Messinger's opinion because it was conclusory, inadequately supported by clinical findings, inconsistent with the objective medical evidence as a whole, and inconsistent with Tarlton's statements. AR 21. The ALJ correctly noted that the record does not contain any clinical findings to support Dr. Messinger's one-page opinion. An ALJ may reject a treating physician's opinion that is conclusory and inadequately supported by clinical findings. *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004). As the ALJ noted, Dr. Messinger primarily listed Tarlton's subjective complaints, which the ALJ properly determined to be less than fully credible, a finding that Tarlton does not challenge. AR 21, 26. *See Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999) (ALJ may properly reject treating physician's opinion based on subjective complaints when ALJ properly discounts claimant's credibility); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may discount treating physician's opinion that rehashes claimant's own statements).

The ALJ could reasonably conclude that Dr. Messinger's opinion was inconsistent with the medical evidence as a whole. AR 21. While in prison for fraud in July 2011 (AR 40-41), Tarlton reported to the Department of Corrections and Rehabilitation a long history of depression, with auditory and visual hallucinations. AR 300. The mental status examination indicated Tarlton was well groomed and fully oriented with normal, clear and coherent speech. Tarlton's affect was constricted and his mood was "fine"/mildly depressed. Tarlton's concentration and attention were within normal limits, and he had problems with short term memory. His thought processes and thought content were within normal limits, his insight was limited and his judgment was fair. He reported auditory and visual hallucinations but showed no evidence of delusions, obsessions or magical thinking. AR 301. It appeared that Tarlton was exaggerating his symptoms and providing inconsistent information. AR 300. His Global Assessment of

7

Functioning ("GAF") was 58.[7] He was treated with medication and transferred to CCCMS for care.[8] AR 300, 302.

In July 2012, Tarlton's mental health annual review indicated mildly impoverished speech and thought processes, but normal orientation, mood, sleep/appetite, cognition, intellectual functioning, concentration, attention and memory. AR 297-98. In August 2012, Tarlton asked to resume Remeron to relieve agitation, and denied other psychiatric complaints. His mental status examination indicated he was calm, cooperative, coherent and logical. He reported that he no longer heard voices while on medication. His affect was appropriate, and his insight and judgment were intact. AR 289. Tarlton was diagnosed with schizoaffective disorder, depressed type, polysubstance dependence, institutional remission, and antisocial personality disorder features. His GAF was 60. AR 299.

The ALJ could reasonably conclude that Tarlton's testimony was inconsistent with Dr. Messinger's opinion. Whereas Dr. Messinger reported auditory delusions, Tarlton testified at the hearing (consistent with prison medical records), that he does not hear voices "at all" because he takes his medications.[9] "It's been a while" since he heard voices; "I'm not really hearing them, right." AR 47.

To the extent Tarlton argues that Dr. Messinger's opinion was "entirely consistent" with the opinion of Dr. Unwalla, a consultative examiner, his argument is not

---

[7] A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).

[8] Correctional Clinical Case Management System ("CCCMS") is the lowest level of mental health care for inmates who are stable and functioning, exhibit symptom control or are in partial remission, and usually have a GAF of 50 or above. http://www.cdcr.ca.gov (search "CCCMS") (last visited Oct. 20, 2015).

[9] Impairments that can be controlled effectively with medication are not considered disabling. *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).

entirely accurate.  Unlike Dr. Unwalla, Dr. Messinger found that Tarlton's memory was intact and that he was able to handle his own funds.   AR 324, 330.

The ALJ articulated specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Messinger's opinion.

### 2. Examining Physician's Opinion

Tarlton argues that the ALJ failed to properly consider the opinion of Dr. Unwalla, a consultative examining psychiatrist.

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings.  *Orn*, 495 F.3d at 631.  When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'"  *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

Dr. Unwalla performed a psychiatric evaluation on December 20, 2013.  AR 320-24.  During the mental status examination, Tarlton was suspicious and guarded, exhibited severe thought blocking, had problems processing information, appeared to be slow to understand and observe, and had some psychomotor retardation.  Tarlton's speech was slowed, his mood was described as depressed and his affect was blunted.  AR 322.  Tarlton reported hearing voices.  His family and friends helped with activities of daily living, and he did not perform chores or errands.  AR 321-22.  He was able to register 3 out of 3 items at 0 minutes, and 0 out of 3 items at 5 minutes.  He could not do serial sevens or threes, and was unable to spell any five letter words forward and backward.  His insight and judgment were described as "poor."  AR 322.

Dr. Unwalla diagnosed with schizophrenia, paranoid type and borderline intellectual functioning, and assessed a GAF of 58.  Tarlton "continues to hear voices mumbling" and "[i]f he runs out of medications he starts decompensating."  AR 323.  Tarlton had moderate difficulties in concentration, persistence and pace; maintaining composure and even temperament; and maintaining social functioning.  Tarlton was intellectually and psychologically incapable of performing activities of daily living.  Dr.

Unwalla concluded that Tarlton would have moderate limitations in performing simple and repetitive tasks, performing work activities on a consistent basis without special or additional supervision, and handling the usual stresses of gainful employment. He would have moderate limitations completing a normal workday or work week due to his mental condition, and interacting with supervisors, coworkers or the public. Tarlton could not appropriately handle funds. AR 323-24. Dr. Unwalla assessed marked or extreme limitations in all areas of functioning. AR 325-26. Dr. Unwalla identified severe thought blocking; problems with attention, memory and auditory hallucination; and problems with information processing as factors supporting his assessment. AR 325-26. He stated that Tarlton was unable to drive/follow directions. AR 326.

The ALJ gave "little weight" to Dr. Unwalla's opinion because Dr. Unwalla examined Tarlton only once and did not have the opportunity to review the entire record, including Tarlton's hearing testimony. The ALJ found that Dr. Unwalla's opinion was inconsistent with Tarlton's treatment records, which indicated his psychological symptoms were well controlled with medication, and with Tarlton's testimony. The ALJ also noted the prior ALJ decision, which discussed malingering and Tarlton's unreasonably low IQ scores that were found to be invalid. AR 22. The ALJ gave "great weight" to the opinions of the State Agency psychological consultants, who concluded that Tarlton had no mental functional limitations. AR 22, 78-79, 91-92. A non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas*, 278 F.3d at 957.

The ALJ erred in discounting Dr. Unwalla's opinion on the ground that, as an examining physician, he examined Tarlton once. *See Brown v. Colvin*, 2015 WL 3823938, at *8 n.9 (C.D. Cal. June 19, 2015) (citing *Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1192 (E.D. Wash. 2009) (ALJ erred in discounting examining physician's opinion based on one examination).

1        This error is harmless because the ALJ's other reasons for discounting Dr. Unwalla's opinion are supported by substantial evidence. Dr. Unwalla stated that "[t]here were no specific mental health records available for review." AR 320. Substantial evidence supports the ALJ's finding that Dr. Unwalla's opinion was inconsistent with Tarlton's treatment records. As discussed above, Tarlton's mental status examinations indicated generally mild findings. Tarlton's psychological symptoms of hearing voices were well-controlled with medication according to treatment records and Tarlton's testimony. AR 46-47, 289, 297-98, 301, 306, 321.

        Tarlton contends that the ALJ rejected Dr. Unwalla's opinion based on "extra-record evidence," namely, an ALJ's prior opinion regarding an earlier time period. The prior ALJ decision is part of the record. AR 64-71. In that decision, the ALJ noted that the examining psychologist found that Tarlton's test results were invalid. Not only was Tarlton's Rey 15 II score "suspicious of malingering or dissimulation," but Tarlton's memory performance was significantly lower than an individual with Alzheimer's or Korsakoffs disease and his test scores were much lower than his presentation or history could support. AR 69.

        Read in context, the ALJ's point was that Dr. Unwalla examined Tarlton without the benefit of seeing Tarlton's inconsistent presentations to mental health providers. Contrary to Tarlton's argument, the inconsistencies were not limited to the time frame of the ALJ's prior opinion. In July 2011, the treatment record noted that Tarlton reported auditory and visual hallucinations but could not provide sufficient information about his symptoms. It appeared that he was "exaggerating" symptoms and providing "inconsistent information." AR 300. In a record submitted to the Appeals Council and made a part of the record (AR 5), there is indication that the clinic refused to give Tarlton narcotic medications after he denied previously picking up medications from the pharmacy and denied that the signature was his. AR 355. The ALJ did not err in discounting Dr. Unwalla's opinion.

### D. Harmless Error

Even assuming the ALJ committed legal error by finding the mental impairments nonsevere at step two of the sequential analysis, "'we uphold the decision where that error is harmless,' meaning that 'it is 'inconsequential to the ultimate nondisability determination,'' or 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity.'" *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation omitted).

An error at step two is harmless when the ALJ considers the impairment at a later step in the sequential analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (assuming ALJ erred at step two by failing to list bursitis, error was harmless when ALJ considered limitations from bursitis at step four); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (because step two was decided in claimant's favor, any error in failing to find that obesity was severe impairment at step two was harmless unless claimant shows error at later step).

As discussed above, the ALJ limited Tarlton to semiskilled work at step four. Semi-skilled work "needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 416.968. The ALJ found Tarlton could perform his past relevant work of home attendant with a SVP of 3. AR 28-29. Tarlton does not identify any mental functional limitation that the ALJ failed to consider. *Burch*, 400 F.3d at 684.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: October 29, 2015

_____
ALICIA G. ROSENBERG
United States Magistrate Judge